UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

MIL-RAY, an Oregon corporation,

        Plaintiff/Counter-Defendant

    v.

EVP INTERNATIONAL, LLC, an Ohio limited
liability company,

        Defendant/Counter-Claimant.

Case No. 3:19-cv-00944-YY

OPINION AND ORDER

YOU, Magistrate Judge.

Plaintiff Mil-Ray brings claims for fraud and quantum meruit. Defendant EVP International, LLC counterclaims for breach of contract and seeks a declaratory judgment. This court has jurisdiction over the action based on complete diversity between the parties and alleged damages exceeding $75,000. 28 U.S.C. § 1332.

Defendant has filed a Motion to Transfer or Dismiss under 28 U.S.C. § 1404 and the Doctrine of *Forum Non Conveniens* (ECF 64). Defendant seeks transfer of this lawsuit to the Southern District of Ohio or dismissal so that it can be refiled in Ohio federal or state court. Defendant's motion is DENIED for the reasons discussed below.

# I.    Procedural History

Plaintiff originally brought this action in Multnomah County Circuit Court, alleging claims for fraud and quantum meruit and a violation of O.R.S. 646A.097. Defendant removed the matter to federal court and filed a Motion to Dismiss or Transfer (ECF 30), which this court granted in part and denied in part. Findings and Recommendations ("F&R"), ECF 41, *adopted by* Opinion and Order ("O&O"), ECF 52. The court dismissed the claim premised on O.R.S. 646A.097, finding the statute violated the dormant Commerce Clause. *See id.* at 14. The court denied with leave to renew the motion regarding plaintiff's fraud and quantum meruit claims, finding "there are unresolved factual and legal issues surrounding whether the parties made a separate agreement about Home Depot sales and whether those sales are encompassed within the ICA," i.e., the Independent Contractor Agreement dated October 18, 2016. *Id.* at 25, 28.

Defendant argued that even assuming the parties had made a separate oral agreement, it was void under the integration clause of the ICA, which provides that no waiver, alteration, or modification of any of the provisions in the ICA is binding unless in writing. *See* ICA ¶ 21, ECF 10. However, plaintiff alleged that defendant itself believed the Home Depot agreement did not fall under the ICA and claimed to have an email in which defendant's CEO said as much. *See* First Am. Compl. ¶ 6, ECF 24. Plaintiff chose to file statutory, fraud, and quantum meruit claims against defendant, instead of a breach of contract claim, because defendant had taken the position that the Home Depot sales did not fall within the ICA.

This court concluded that "[w]hile plaintiff has not yet provided any evidentiary support for its claim that there was a separate, valid agreement, that is because plaintiff has been unable to conduct discovery. . . Because of the unresolved issues, this is one of those instances where the Rule 12(b)(3) motion must be denied, 'at least until facts are resolved,' perhaps by

evidentiary hearing, at a later date." F&R 26, ECF 41 *adopted by* O&O, ECF 52 (quoting *Murphy v. Schneider National, Inc.*, 362 F.3d 1133, 1140 (9th Cir. 2004)).

Since the court's prior ruling, plaintiff amended its complaint a second time, further substantiating its fraud allegations, and defendant has asserted a counterclaim for breach of contract and declaratory judgment. Defendant argues its counterclaim is both compulsory and subject to the ICA's forum selection clause and that the counterclaim's allegations serve to "clarify that Plaintiff's claims cannot be adjudicated without analyzing the ICA." Mot. 4, ECF 64. Plaintiff continues to maintain, however, that its "tort and equitable claims arise separately and independently from" the ICA. Resp. 5, ECF 76.

## II.     Background

### A.     Plaintiff's Allegations

Defendant makes luminous exit signs. Second Am. Compl. ¶ 1, ECF 71. In October 2016, plaintiff and defendant entered into the ICA through which they agreed that plaintiff would solicit orders for luminous exit signs and, if defendant approved those orders, it would pay plaintiff a commission for those sales. *Id.* ¶ 2.

This written agreement "existed between the parties from 2016 until 2018," during which time plaintiff "pursued Home Depot with the hopes of making them a customer." *Id.* ¶¶ 3, 6. Home Depot is a large national chain of home improvement stores with over 2,000 locations. *Id.* ¶ 3. Plaintiff alleges that in late 2017, it secured for defendant a preliminary commitment from Home Depot for a pilot project consisting of ten stores. *Id.* Plaintiff further claims that, under the ICA, it would have made approximately $3,211,059 in commissions from Home Depot sales, assuming the pilot project was successful. *Id.* ¶ 4.

However, plaintiff alleges that during a September 24, 2017 conference call, defendant induced plaintiff into transferring the Home Depot account over as a "house account" by falsely promising to pay a straight 15% commission on Home Depot sales, installation, audits, and removals.[1]  *Id.* ¶¶ 4, 8.  Plaintiff alleges that, under this new formula, it was entitled to a lesser commission of $2,730,015, but that it accepted this arrangement so it could pursue sales leads with other large chains such as Walmart.  *Id.*  Plaintiff contends that defendant paid for several Home Depot installations at the agreed 15% commission, but then stopped and wanted plaintiff to accept a 3% "finder's fee," in violation of its "the written sales agreement that was entered into in October, 2016."  *Id.* ¶ 5.  Defendant has "disavowed" that it is obligated under the ICA to pay plaintiff any commissions from Home Depot sales.  *Id.* ¶ 6.

Plaintiff also alleges that after it turned over the Home Depot account to defendant, defendant encouraged plaintiff to pursue, and plaintiff did pursue, other sales leads, including Walmart, another large national chain of retail stores.  *Id.* ¶¶ 14-15.  However, after plaintiff secured Walmart as a house account for defendant and just as defendant was planning to roll out a pilot project with Walmart, defendant fired plaintiff.  *Id.* ¶ 16.

### B.      The ICA

Under the terms of the ICA, defendant agreed to pay plaintiff referral fees for any "Qualifying Transaction, whenever such transactions shall take place."  ICA ¶ 3, ECF 10.  A qualifying transaction is "defined as any sale consummated by [defendant] to a Customer . . . that has been introduced by [plaintiff] through the procedures set forth on Addendum A to this Agreement."  *Id.*

---

[1] Plaintiff claims defendant was represented during this conference call by John Browner (investor and acting president), Ken Miller, Jr. (vice president), and Duane Kimble (chief financial officer).  Second Am. Compl. ¶ 4, ECF 71.

Addendum A provides that plaintiff "may from time to time refer a potential customer . . . to [defendant]," who "in its sole discretion, shall have the option to enter into, or decline to enter into, an agreement with any Potential Customer." *Id.*, Addendum A, ¶¶ 3.1.1, 3.1.2. The addendum further states that if defendant "enters into an agreement with any such Potential Customer, . . . within one year of such Potential Customer being referred to [defendant], such Potential Customer shall be considered a 'Customer' for purposes of this Agreement and [defendant] shall pay a fee to [plaintiff] as set forth in Section 3 of the Agreement." *Id.* ¶ 3.1.3. The referral fees are established by a formula set forth and attached in Exhibit A, and appear to range from 5% to 30%. *Id.*, Ex. A.

The ICA contains the following pre-suit notification clause:

> Notification of Suit. Contractor shall at all times hereafter immediately notify the Company upon learning of any threatened or pending litigation or other action arising out of or related to this Agreement and the activities conducted pursuant hereto. The notification shall be in writing, shall include a detailed description of the action and its basis, and shall include copies of all available documents to such action.

*Id.* ¶ 16. The ICA also contains the following forum selection clause:

> Governing Law. This Agreement shall be governed by and construed in accordance with the laws of the State of Ohio. With respect to any disputes arising pursuant hereto, each party: (1) irrevocably submits to the exclusive general jurisdiction of the courts of the State of Ohio; (ii) consents that any such action or proceeding may be brought in such courts; (iii) waives any objection that he may have to the venue or any such action or proceeding in any such court or that such action or proceeding was brought in such or any inconvenient court and agrees not to plead or claim the same; and (iv) agrees that service of process in any such action or proceeding may be effected in accordance with the provisions of Section 20 hereof.

*Id.* ¶ 18.

### C.    Defendant's Counterclaim

In its counterclaim, defendant alleges plaintiff "breached the ICA by, among other things: (1) not being reasonably available to provide all services and duties agreed upon; (2) not performing its duties faithfully and to the best of its abilities; (3) not performing its services in accordance with EVP's rules; (4) failing to maintain high ethical standards and meet or exceed applicable quality standards; (5) falsely representing its performance of duties and obligations under the ICA would not violate any rule applicable to it or any document to which it was bound; and (6) assigning or delegating obligations under the ICA."  Mot. 3, ECF 64 (citing Counterclaim ¶¶ 10-46, ECF 61).[2]

Defendant alleges breaches of the ICA not just over the Home Depot account but also with respect to defendant's accounts with Walmart, Creative Lighting Solutions, Inc., Complete Threat Preparedness, Inc., CBRE Group, Inc., Simon Property Group, Inc., Nike, Inc., Pacific University, the University of Oregon, and the State of Oregon.  Am. Answer and Second Am. Counterclaim ¶¶ 33-35, ECF 97.  Defendant claims it has incurred more than $3,296,000 in damages in the form of lost business opportunities, lost goodwill, lost benefits of its bargain, and attorney's fees incurred in defense of this lawsuit.  *Id.* ¶ 71.

## III.    Interpretation and Scope of the ICA's Forum Selection Clause

Whereas a motion to transfer a civil action to a federal forum is governed by 28 U.S.C. § 1404(a), a motion to dismiss or transfer a civil action to a nonfederal forum is subject to the doctrine of *forum non conveniens*.  The analysis for both motions is the same, however, because § 1404(a) is "merely a codification of the doctrine of *forum non conveniens* for the subset of

---

[2] Although the parties amended their pleadings after defendant filed the present motion to dismiss or transfer, there is no indication those amendments are material to the resolution of this motion.  The court therefore relies on the most recent pleadings.

cases in which the transferee forum is within the federal court system." *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 60 (2013).

"A forum non conveniens determination is committed to the sound discretion of the district court." *Lueck v. Sundstrand Corp.*, 236 F.3d 1137, 1143 (9th Cir. 2001) (citations omitted). "*Forum non conveniens* is an exceptional tool to be employed sparingly, not a doctrine that compels plaintiffs to choose the optimal forum for their claim." *Dole Food Co. v. Watts*, 303 F.3d 1104, 1118 (9th Cir. 2002) (simplified). The standard is "whether defendants have made a clear showing of facts which establish such oppression and vexation of a defendant as to be out of proportion to plaintiff's convenience, which may be shown to be slight or nonexistent." *Id.* (simplified). As the moving party, the defendant bears the burden of showing (1) there is an adequate alternative forum, and (2) the balance of private and public interest factors favors dismissal. *Id.*

The "calculus changes," however, when the parties have a contract that contains a valid forum selection clause. *Atlantic Marine*, 571 U.S. at 63. If so, (1) "the plaintiff's choice of forum merits no weight" and "the plaintiff bears the burden of establishing that transfer to the forum for which the parties bargained is unwarranted," (2) the court "should not consider arguments about the parties' private interests," and (3) the court does not apply "the rule that the law of the court in which the plaintiff inappropriately filed suit should follow the case to the forum contractually selected by the parties." *Id.* at 63-65. "In all but the most unusual cases, therefore, 'the interest of justice' is served by holding parties to their bargain." *Id.* at 66.

Thus, the first question is whether a valid forum selection clause applies in this case. Plaintiff does not contest the validity of the ICA's forum selection clause, but argues this dispute falls beyond its reach.

Federal law governs the interpretation of a forum selection clause in a diversity case such as this. *Manetti–Farrow, Inc. v. Gucci America, Inc.*, 858 F.2d 509, 513 (9th Cir. 1988). In interpreting a forum-selection clause under federal law, courts "look for guidance 'to general principles for interpreting contracts.'" *Sun v. Adv. China Healthcare, Inc.*, 901 F.3d 1081, 1086 (9th Cir. 2018) (quoting *Doe 1 v. AOL LLC*, 552 F.3d 1077, 1081 (9th Cir. 2009)).

The standard for determining whether a forum selection clause applies depends on the breadth of its language. Broad forum selection clauses include those applying to "any dispute arising out of or relating to" an agreement. *Cape Flattery Ltd. v. Titan Mar., LLC*, 647 F.3d 914, 922 (9th Cir. 2011) (quoting *Mediterranean Enterprises, Inc. v. Ssangyong Corp.*, 708 F.2d 1458, 1464 (9th Cir. 1983)).[3] Narrow forum selection clauses include those applying to any dispute "arising hereunder," "arising under," and "arising out of" an agreement.[4] *Id.*

A broad forum selection clause "reaches every dispute between the parties having a significant relationship to the contract and all disputes having their origin or genesis in the contract." *See Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 721 (9th Cir. 1999). The factual allegations of the dispute "need only touch matters covered by the contract" for the clause to apply. *Id.*

---

[3] Although *Cape Flattery* and *Mediterranean* concern the interpretation and scope of arbitration clauses, the same analysis applies to forum selection clauses "because an agreement to arbitrate is actually a specialized forum selection clause." *Manetti-Farrow*, 858 F.2d at 514 n.4 (citing *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 519 (1974)).

[4] This distinction between "broad" and "narrow" forum selection clauses is a generalization. Ultimately, it is the language of the clause that controls. *E.g.*, *Edwards Vacuum, LLC v. Hoffman Instrumentation Supply, Inc.*, No. 3:20-CV-1681-SI, 2021 WL 2355405, at *4 (D. Or. June 9, 2021) (interpreting a forum selection clause's "rather unusual phrasing" without reference to this distinction).

By contrast, a narrow forum selection clause covers only those claims "relating to the interpretation and performance of the contract itself." *Advanced China Healthcare*, 901 F.3d at 1086 (quoting *Cape Flattery*, 647 F.3d at 922). "Resolution of noncontract claims relates to interpretation of the contract when the noncontract claims require interpretation of the contract; i.e., the noncontract claims cannot be adjudicated without analyzing whether the parties were in compliance with the contract." *Oracle Am., Inc. v. Oregon Health Ins. Exch. Corp.*, 145 F. Supp. 3d 1018, 1027 (D. Or. 2015) (citations and quotation marks omitted); *see also Cape Flattery Ltd.*, 647 F.3d at 924 (finding the plaintiff's tort claims were not subject to a narrow forum selection clause under *Mediterranean* and *Tracer Research Corp. v. Nat'l Env't Servs. Co.*, 42 F.3d 1292 (9th Cir. 1994), because "[t]he present dispute does not turn on an interpretation of any clause in the contract" nor on the defendant's "performance under the contract"); *TK Products,* 2016 WL 7013470, at *5 n.8 ("Mere references to the Agreement in the Complaint do not require an interpretation of the Agreement."). As framed by the district court and affirmed by the Ninth Circuit in *Cape Flattery*, the question is whether the plaintiff "would have the same claims regardless of whether the [a]greement existed." *Cape Flattery Ltd. v. Titan Mar. LLC*, 607 F. Supp. 2d 1179, 1190 (D. Haw. 2009), *aff'd*, 647 F.3d 914 (9th Cir. 2011). That a claim "would not have arisen 'but for' the parties' [agreement] is not determinative." *Tracer*, 42 F.3d 1292 at 1295 (citation omitted).

Although forum selection clauses often use the terms "disputes" or "proceedings" rather than "claims," *see In re McGraw-Hill Glob. Educ. Holdings LLC*, 909 F.3d 48, 67 (3d Cir. 2018), the Ninth Circuit looks only to the pleaded claims to determine whether a narrow forum selection clause applies. *See Kiley v. MedFirst Consulting Healthcare Staffing, LLC*, 1:17-CV-00470-CL, 2017 WL 11434180, at *4 (D. Or. Oct. 13, 2017) ("the fact that the parties use

'proceeding' instead of 'claim' has no effect on the applicability of the forum-selection clause"). A defendant's contract-based evidence and defenses, standing alone, do not bring a noncontractual claim within the scope of a narrow forum selection clause. *See Kwiecinski v. Medi-Tech Intern. Corp.*, 3:14-CV-01512-BR, 2015 WL 3905224, at *3 (D. Or. June 25, 2015) (construing a narrow forum selection clause and rejecting the defendant's argument that an employment contract would need to be interpreted to resolve the employer's defense that it terminated the plaintiff because he violated his employment contract); *cf. Narayan v. EGL, Inc.*, 616 F.3d 895, 899 (9th Cir. 2010). *Narayan* concerned the application of a narrow choice-of-law clause under Texas law, but the Ninth Circuit asked a similar question: whether the claims rose or fell on the interpretation and enforcement of any contractual provision. 616 F.3d at 898-99. The plaintiffs brought claims under the California Labor Code. The defendant argued the court would need to interpret the plaintiffs' employment contracts to determine whether the plaintiffs were employees or independent contractors. The Ninth Circuit disagreed, holding that "[w]hile the contracts will likely be used as evidence to prove or disprove the statutory claims, the claims do not arise out of the contract, involve the interpretation of any contract terms, or otherwise require there to be a contract." *Id.* at 899 (citation omitted).

This mirrors the Second Circuit's approach. In *Phillips v. Audio Active Ltd.*, the Second Circuit found a narrow forum selection clause in the plaintiff's recording contract did not cover his copyright infringement claims because he had "asserted no rights or duties" under the contract. 494 F.3d 378, 391 (2d Cir. 2007). The rights instead arose from the plaintiff's status as the author of original works. While the defendants were expected to invoke the recording contract in their defense, the plaintiff denied that the contract had "any role or relevance whatever" with respect to his claims. *Id.* The Second Circuit reasoned that "[b]ecause the

recording contract is only relevant as a defense in this suit, we cannot say that [plaintiff's] copyright claims originate from, and therefore 'arise out of,' the contract." *Id.*[5]

The decision in *Wireless Warehouse, Inc. v. Boost Mobile*, LLC, helps to illustrate the fine line between claims that require interpretation of a contract and those that do not. SACV 09-1436-MLG, 2010 WL 891329, at *7 (C.D. Cal. Mar. 10, 2010). There, Wireless Warehouse and Boost Mobile ("Boost") entered into a one-year, prepaid wireless agreement, which they renewed for two years. *Id.* at *1. The wireless agreement contained integration and non-waiver clauses prohibiting oral amendment to the agreement and oral waiver of the agreement's terms and conditions. *Id.* While the wireless agreement was in effect, a Boost representative promised that Boost would pay certain commissions and establish a long-term business partner relationship with Wireless Warehouse if it sold Boost service through its many sub-dealers. *Id.* at *2. In reliance on those promises, Wireless Warehouse set up new facilities, signed new leases, and hired new employees. *Id.* at *3. However, when the wireless agreement expired, Boost refused

---

[5] Not all district courts agree this is the operative rule in the Ninth Circuit. *E.g.*, *Bromlow v. D & M Carriers, LLC*, 438 F. Supp. 3d 1021, 1028 (N.D. Cal. 2020). The plaintiffs in *Bromlow* brought unfair competition and various wage and hour claims. 438 F. Supp. 3d at 1028. One plaintiff had signed an independent contractor agreement with a narrow forum selection clause but did not assert a violation of any rights under the agreement. *Id.* The court nonetheless reasoned that analysis of the plaintiff's noncontractual claims would require an inquiry into his employment status, which would entail analysis of whether the plaintiff was free from the defendant's control, which, in turn, would involve an examination and interpretation of the agreement's provisions and their effect. *Id.* The court reasoned that "the strong judicial preference for enforcing a contractually bargained-for venue is not compatible with allowing creative plaintiffs to skirt forum-selection clauses by pleading around claims sounding in contract." *Id.* (citation omitted). However, this reasoning is inconsistent with the Ninth Circuit's decision in *Tracer*, which held that "[n]otwithstanding the federal policy favoring it, 'arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.'" 42 F.3d at 1294 (quoting *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960)).

to renew the agreement and terminated its business relationship in violation of the representative's promises. *Id.*

Wireless Warehouse asserted contractual claims and noncontractual claims for false promise and promissory estoppel. The wireless agreement contained a narrow arbitration clause, which clearly covered the contractual claims. Labeling it a "closer call," however, the court found the noncontractual claims did not arise out of the wireless agreement because those claims were based on Wireless Warehouse's reliance on promises regarding a future business relationship between the parties made after the parties executed the wireless agreement, the claims did not relate to the parties' rights and duties under the agreement, the alleged promises pertained to a period after the expiration of the agreement, and Wireless Warehouse's performance in reliance on the promises was outside the scope of its obligations under the agreement. *Id.* The court also rejected Boost's argument that it would use the agreement defensively to suggest that Wireless Warehouse's reliance was not reasonable in light of the agreement's terms stating, "While Defendant's possible state-law defenses might ultimately prove successful, they are insufficient to bring Plaintiff's independent claims within the scope of a narrow arbitration clause when those claims do not relate to the interpretation and performance of the Agreement." *Id.* at *7.

In sum, when applying a narrow forum selection clause, the court looks to whether the claim "turn[s] on an interpretation of any cause in the contract." *See Cape Flattery*, 647 F.3d at 924. "A motion to enforce a forum selection clause is treated as a motion to dismiss pursuant to Rule 12(b)(3)." *Doe 1 v. AOL LLC*, 552 F.3d 1077, 1081 (9th Cir. 2009). Therefore, this court "must draw all reasonable inferences in favor of the non-moving party and resolve all factual conflicts in favor of the non-moving party." *Murphy*, 362 F.3d at 1138. "It is the burden

of the party seeking enforcement of a forum selection clause to sufficiently demonstrate that a claim requires interpretation of the contract." *TK Products, LLC v. Buckley*, 3:16-CV-803-SI, 2016 WL 7013470, at *1 (D. Or. Nov. 29, 2016) (citations omitted).

### A. Plaintiff's Claims

Drawing all reasonable inferences in plaintiff's favor, plaintiff's fraud and quantum meruit claims fall outside the scope of the ICA's narrow forum selection clause.

This court previously recognized the ICA contains a narrow forum selection clause, but denied defendant's prior Motion to Dismiss or Transfer (ECF 30), finding "there are unresolved factual and legal issues surrounding whether the parties made a separate agreement about Home Depot sales and whether those sales are encompassed within the ICA." F&R 24-25, ECF 41 *adopted by* O&O, ECF 52. However, during oral argument on the present motion, plaintiff made clear it is not alleging that the parties reached a separate, oral agreement during the September 24, 2017 conference call or that they amended, modified, or altered the ICA. In short, plaintiff does not allege breach of the ICA or any subsequent agreement. Instead, plaintiff alleges claims for fraud and quantum meruit, which are wrongs independent of the ICA.

To recover on a claim of fraud under Oregon law, a plaintiff must prove the following elements:

> (1) the defendant made a material misrepresentation that was false; (2) the defendant did so knowing that the representation was false; (3) the defendant intended the plaintiff to rely on the misrepresentation; (4) the plaintiff justifiably relied on the misrepresentation; and (5) the plaintiff was damaged as a result of that reliance.

*Murphy v. Allstate Ins. Co.*, 251 Or. App. 316, 324 (2012).

Here, plaintiff alleges that the representations defendant made during the conference call are actionable in fraud and that analysis of the elements of a fraud claim does not require

interpretation of the ICA. Specifically, plaintiff alleges defendant falsely represented that (1) it would pay a 15% commission for Home Depot sales to "secure the transfer of the Home Depot account over to Defendant as a 'house account[,]'" Second Am. Compl. ¶ 8(A), ECF 71; (2) this representation was false, as evidenced by defendant's subsequent denial that it ever made the representation, *id.* ¶ 8(B); (3) the representation was made with the "specific intent" to induct plaintiff into making the Home Depot account a "house account," *id.* ¶ 8(C); (4) plaintiff reasonably relied in good faith on the representation to its detriment by turning over the account to defendant, *id.* ¶ 8(D); and (5) plaintiff sustained damages in the form of "lost commissions." *id.* ¶ 8(E).

Plaintiff proffers four emails in support of this claim. A December 5, 2018 email from John Browner, defendant's acting president, recognizes that "the contract was written over two years ago and was reflective of a relationship that has since evolved." Bennett Decl., Ex. 1, ECF 77-1. A December 13, 2018 email from Zachary Green, defendant's CEO, states, "I feel they should get a finder's fee for both Walmart and Home Depot Facilities. They did open up both of those accounts." Bennett Decl., Ex. 2, ECF 77-2. The ICA contains no mention of a finder's fee. In a March 1, 2019 email, Browner took the position that the Home Depot sales were made more than one year after plaintiff referred Home Depot to defendant, thereby making plaintiff ineligible for a referral fee under the terms of the ICA. *Id.*, Ex. 3, ECF 77-3; *see also* ICA, Addendum A, ¶ 3.1.3, ECF 10. Finally, a March 21, 2019 email from Browner asserts that plaintiff was not entitled to any compensation for Home Depot sales because they did not "fall[] under the construct" of the ICA. Bennett Decl., Ex. 4, ECF 77-4.

As in *Wireless Warehouse*, plaintiff's reliance on defendant's representations made during the conference call pertained to a business relationship that had, as Browner put it by

email, "since evolved." The fraud claim, like the ICA, concerns Home Depot sales; however, the promised commission was to be calculated from defendant's servicing of Home Depot as a "house account," which is not contemplated by the ICA. Nor was plaintiff's transfer of an account to defendant as a house account an obligation imposed by the ICA. Moreover, in emails, Green wrote about a finder's fee and Browner wrote that the Home Depot sales fell outside the construct of the ICA entirely. As alleged, none of the fraud claim's elements turn on an interpretation of any clause in the ICA. None of these elements invoke a right or duty originating in the ICA, and none of these elements require analyzing whether the parties were in compliance with the ICA.

Defendant argues the justifiable reliance element of the fraud claim necessarily relates to the interpretation and performance of the ICA. Defendant invokes several Ninth Circuit cases for the well-settled rule that justifiable reliance cannot be established where a written contract exists whose terms contradict the oral representation. In *Bank of the West v. Valley National Bank of Arizona*, 41 F.3d 471, 478 (9th Cir. 1994), and *Paracor Financial, Inc. v. General Electric Capital Corp.*, 96 F.3d 1151, 1159 (9th Cir. 1996), the Ninth Circuit found the plaintiffs could not establish justifiable reliance as a matter of law when they agreed to exercise their own judgment on certain financial matters but then alleged fraud in reliance on the defendants' representations and assurances on those matters.[6]

---

[6] Defendant also relies on two unpublished opinions for the same rule. In *Government Computer Sales v. Dell Marketing*, the plaintiff brought fraud and negligent misrepresentation claims alleging Dell Marketing made oral representations promising the plaintiff exclusivity as a reseller of computer products. 199 F. App'x 636, 639 (9th Cir. 2006) (unpublished). The Ninth Circuit affirmed the district court's dismissal for failure to state a claim finding the parties' written agreements were nonexclusive, which clearly conflicted with the alleged oral representations providing for exclusivity. *Id.* at 639. In *Sussex Fin. Enterprises, Inc. v. Bayerische Hypo-Und Vereinsbank AG*, 460 F. App'x 709, 712 (9th Cir. 2011) (unpublished), the Ninth Circuit

Defendant asserts there is no way to determine whether it defrauded plaintiff by promising a future 15% commission to make Home Depot a house account without determining whether reliance was justified given that the ICA provides the mechanisms by which plaintiff can otherwise earn a commission. This may well be true, but it would only be true if defendant proffers the ICA in defense of the fraud claim. Although this argument "might ultimately prove successful," it is insufficient to bring plaintiff's fraud claim within the scope of a narrow forum selection clause when the claim does not otherwise "relate to the interpretation and performance of the Agreement." *See Wireless Warehouse*, 2010 WL 891329, at *7.

This same reasoning applies to the ICA's pre-suit notice and integration clauses. Defendant may invoke these clauses in defense of plaintiff's claims, but this does not alter the nature of the claims.

Plaintiff's quantum meruit claim is a much easier call. The Ninth Circuit has specifically held that "by definition," a claim for "quantum meruit, which by its own terms rests on the theory that services were performed and accepted pursuant to an implied contract" "does not directly relate to the interpretation and performance of the [a]greement itself." *Mediterranean*, 708 F.2d at 1464-65. Because the ICA would only be used as evidence to disprove plaintiff's claims in defense of this suit, the claims do not arise out of the ICA.

---

affirmed a grant of summary judgment on a fraud claim finding the defendant's alleged assurance that it would only unwind a loan for a particular commercial reason contradicted a term in the agreement that provided the defendant could unwind the loan for any reason. However, none of the Ninth Circuit cases defendant cites deal with the scope of a narrow forum selection clause. Defendant has not moved to dismiss under Rule 12(b)(6) or for summary judgment, but instead only to enforce the ICA's narrow forum selection clause.

## B.     "Compulsory" Counterclaim

Defendant contends that, because it has brought compulsory counterclaims that arise

under the ICA, the entire case must be dismissed or moved to Ohio pursuant to the forum

selection clause.  However, in analogous circumstances, courts have not dismissed or transferred

the entire case but instead dismissed or transferred only those counterclaims that are governed by

the forum selection clause.

For example, in *Publicis Communication v. True North Communications Inc.*, 132 F.3d

363 (7th Cir. 1997), the Seventh Circuit recognized that compulsory counterclaims are not really

compulsory but are brought when a party wants to avoid the defense of preclusion:

> Despite the impression one might get from the name of the doctrine, no one is
> "compelled" to present a compulsory counterclaim. Only a litigant that wants to
> avoid a later defense of preclusion need do so.

*Id.* at 365.  The court observed that "[p]reclusion is an affirmative defense, and like other legal

affairs is subject to contractual adjustment by the parties," including a forum selection clause:

"Just as one litigant may promise not to plead the statute of limitations, so it may promise not to

plead the defense of claim preclusion."  *Id.* at 366.  And while the plaintiff in that case "did not

in so many words promise not to invoke the defense of preclusion in Delaware, . . . any forum

selection clause has this effect."  *Id.*  Otherwise stated, "[i]f the parties promise to litigate a

dispute only in a particular forum, a party to the contract cannot seek to bar the litigation in that

forum because the claim was not presented in some other forum."  *Id.*

The court then analogized forum selection clauses to arbitration clauses, which are "just a

particular kind of forum-selection clause."  *Id.*  The court cited the Ninth Circuit's decision in

*Electrical Workers Local No. 11 v. G.P. Thompson Electric, Inc.*, 363 F.2d 181 (9th Cir. 1966),

which "holds that a dispute covered by a contract's arbitration clause need not—indeed, may

not—be asserted as a compulsory counterclaim in litigation." *Id.* (also citing *Bristol Farmers Market & Auction Co. v. Arlen Realty & Development Corp.*, 589 F.2d 1214, 1220-21 (3d Cir. 1978), and FED. PRAC. & PROC. § 1412, at 96-97). Under that reasoning, the court held that the defendant's "compulsory" counterclaim was subject to the forum selection clause:

> By agreeing to litigate in Delaware all claims arising out of requests under § 1.1 of the pooling agreement, True North promised not to assert such claims in other forums whether or not they would be "compulsory" counterclaims, and Publicis promised not to contend (in Delaware) that True North should have raised the claim somewhere else. By presenting the claim in Chicago, True North broke its promise. The district court should have enforced the pooling agreement by dismissing the counterclaim.

*Id.*

Recently, the Central District of California applied the *Publica* holding in *TMF Tr. Ltd. v. M/T Megacore Philomena*, No. CV 17-09010 AGR, 2020 WL 3064447, at *3 (C.D. Cal. Mar. 24, 2020). The court rejected the defendant's argument that it had not "commence[d] any proceedings" within the meaning of the forum selection clause because it was merely asserting counterclaims: "It is well established that a counterclaim results in shifting the parties so that the party counterclaiming becomes the plaintiff on the counterclaim and the original plaintiff becomes the defendant." *Id.* (quoting *Polimaster Ltd. v. RAE Sys.*, 623 F.3d 832, 839 (9th Cir. 2010)). The court then applied the reasoning from *Publica*, which it found "persuasive," and held that the forum selection clause applied to the defendant's counterclaim. *Id.*

Other courts have similarly dismissed or transferred counterclaims that are subject to a forum selection clause:

> *Ten-X, Inc. v. Pasha Realty Holdings, LLC*, No. SACV 20-02004JVS(ADSx), 2021 WL 971153, at *7 (C.D. Cal. Mar. 3, 2021) (finding the transfer of five counterclaims "appropriate" under the forum selection clause).

> *Bancroft Life & Cas. ICC, Ltd. v. FFD Res. III, LLC*, No. CIV.A. H-11-2382, 2012 WL 2368302, at *4 (S.D. Tex. June 21, 2012) ("Nor is there merit to

Counter–Plaintiffs' argument that their claims to enforce the benefits of the insurance policy are compulsory counterclaims and therefore must be brought in this Court.  Assuming without deciding that Counter–Plaintiffs' Policy claims fall within the ambit of Rule 13(a) because they "arise[ ] out of the transaction or occurrence that is the subject matter of the opposing party's claim," FED. R. CIV. P. 13(a)(1)(A), the Court may not ignore the forum-selection clause.").

*Mayfield v. Crawford*, No. 5:07CV2775, 2008 WL 11378853, at *3 (N.D. Ohio July 3, 2008) ("By filing their counterclaim in this Court, USF and North River violated the contractual provision for which the parties freely bargained.  All claims arising out of the BBPUA must be litigated in San Diego, California. Since the only claims asserted by USF and North River derive from their rights under the BBPUA, and they are not named as defendants in Mayfield's complaint, their counterclaims are dismissed without prejudice, and they are dismissed as parties to this action.").

*Diesel Props S.r.L. v. Greystone Bus. Credit II LLC*, No. 07 CIV. 9580 (HB), 2008 WL 4833001, at *16 (S.D.N.Y. Nov. 5, 2008) ("For the foregoing reasons, all of GBMI's counterclaims and all of the counterclaims brought by Greystone as the alleged assignee of GBMI's rights are dismissed due to the forum selection clauses.").

*Sch.-Link Techs., Inc. v. Applied Res., Inc.*, No. 05-2088-JWL, 2005 WL 2269182, at *2 (D. Kan. Sept. 16, 2005) ("For essentially the reasons stated in the court's prior order—namely, that the mandatory forum selection clause is valid and enforceable as to Applied Resources' fifth counterclaim—School-Link's motion to dismiss is granted.").

*FASTI USA v. FASTI Farrag & Stipsits GmbH*, No. 02 C 8191, 2003 WL 1581472, at *2 (N.D. Ill. March 26, 2003) ("[W]hether FASTI Austria's counterclaims are compulsory under Rule 13(a) does not bear on the enforceability of the forum selection clause . . . FASTI Austria agreed to litigate claims arising from the licensing agreement in Austria. Rule 13(a) does not override that agreement.").

*Karl Koch Erecting Co. v. New York Convention Ctr. Dev. Corp.*, 838 F.2d 656, 659 (2d Cir. 1988) ("Koch, on the other hand, would not be permitted to assert counterclaims in federal court because they are an 'action or proceeding . . . commenced by' Koch and subject to the clause. Koch's action against NYCCDC would therefore have to proceed in state court.").

*PMP II, LLC v. D.B. Zwirn Real Est. Credit Partners, LLC*, CIVIL NO. 08-00583 DAE-KSC, 2009 WL 10677194, at *2 (D. Haw. Apr. 10, 2009) ("[E]ven assuming the Lenders' claim is a compulsory counterclaim, they must bring the claim in a forum specified by the clause, assuming the clause is valid and applicable.").

*See also* 6 FED. PRAC. & PROC. CIV. § 1412 (3d ed., April 2021 update) ("Similar reasoning has

led to the conclusion that the need to uphold forum-selection clauses alters the impact of the

compulsory-counterclaim rule so that a party need not file a compulsory counterclaim in an

improper forum to avoid having the claim barred in a proper forum."); *Reading Rock Ne., LLC.*

*v. Russel*, No. Civil No. 20-5728 (RBK/KMW), 2021 WL 870642, at *5 (D.N.J. Mar. 8, 2021)

("Indeed, courts have recognized that claims arising from separate contracts are not compulsory

counterclaims and therefore can be tried in separate forums.").

Thus, applying the reasoning of the cases above, it is arguably defendant's counterclaim,

not plaintiff's claims, that is subject to dismissal or transfer pursuant to the ICA's forum

selection clause.[7] While plaintiff has not filed such a motion to dismiss or transfer, case law

nevertheless does not support defendant's argument that because it has brought a "compulsory"

counterclaim arising under the ICA, this court must dismiss or transfer plaintiff's claims that are

based on events arising outside the ICA. Defendant's counterclaim is not "compulsory"—

because defendant's counterclaim is subject to the ICA's forum selection clause, plaintiff will

not be able to argue claim preclusion if defendant brings this claim in Ohio. *See Publica*, 132

F.3d at 366 ("If the parties promise to litigate a dispute only in a particular forum, a party to the

contract cannot seek to bar the litigation in that forum because the claim was not presented in

some other forum."). Although one could argue that this result is less efficient for the court and

---

[7] Courts have found dismissal without prejudice is preferable to transfer where the forum
selection clause permits suit in either state or federal court. *See GMAC Commercial Credit, LLC
v. Dillard Dept. Stores, Inc.*, 198 F.R.D. 402, 408-09 (S.D.N.Y. 2001); *Mayfield v. Crawford*,
No. 5:07CV2775, 2008 WL 11378853, at *3 (N.D. Ohio July 3, 2008) (dismissing without
prejudice).
     But here, the forum selection clause states that the claims must be brought in the "courts
of the State of Ohio," which defendant argues means state court. Mot. 12, ECF 64. Therefore,
dismissal is arguably more appropriate.

the parties, the parties have negotiated a narrow forum selection clause, and there is a "strong presumption in favor of the plaintiff's choice of forum." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255-56 (1981). Moreover, defendant's suggested approach would allow a party to unilaterally circumvent a narrow forum selection by bringing a counterclaim that arises under a contract, in contravention of what the parties previously negotiated.

Finally, plaintiff argues that defendant has waived any objection to venue by affirmatively seeking relief through counterclaims for damages. Resp. 5, ECF 76 (citing cases). While this argument may have merit, the court does not need to reach this issue.

## V.     *Forum Non Conveniens* **and 28 U.S.C. § 1404(a)**

Having determined plaintiff's claims are not subject to the forum selection clause, the court turns to the *forum non conveniens* factors.

### A.     **Adequate Alternative Forum**

"An alternative forum ordinarily exists when defendants are amenable to service of process in the foreign forum and when the entire case and all parties can come within the jurisdiction of that forum." *Gutierrez v. Adv. Med. Optics, Inc.*, 640 F.3d 1025, 1029 (9th Cir. 2011) (quoting *Dole Foods Co., Inc. v. Watts*, 303 F.3d 1104, 1118 (9th Cir. 2002) (quotation marks omitted). "An alternative forum is adequate if the intended forum is capable of 'providing the plaintiff with a sufficient remedy for his wrong.'" *Id.* (quoting *Dole Foods*, 303 F.3d at 1118) (simplified). It is only in "rare circumstances . . . that this requirement is not met." *Lueck*, 236 F.3d at 1143 (quoting *Lockman Found. v. Evangelical Alliance Mission*, 930 F.2d 764, 768 (9th Cir. 1991)) (alteration added).

Defendant has met its burden of establishing that Ohio state and federal courts are an adequate alternative forum.

**B.      Deference to Plaintiffs' Choice of Forum**

"[T]here is ordinarily a strong presumption in favor of the plaintiff's choice of forum, which may be overcome only when the private and public interest factors clearly point towards trial in the alternative forum." *Piper Aircraft*, 454 U.S. at 255-56.  Moreover, "[w]hen the home forum has been chosen, it is reasonable to assume that this choice is convenient." *Id.* at 256.

Here, plaintiff chose its home forum and that choice is entitled to deference.

**C.      Balance of Private and Public Interest Factors**

**1.      Private Interest Factors**

Courts consider the following private interest factors: (1) the residence of the parties and witnesses, (2) the forum's convenience to the litigants, (3) access to physical evidence and other sources of proof, (4) whether unwilling witnesses can be compelled to testify, (5) the cost of bringing witnesses to trial, (6) the enforceability of the judgment, and (7) all other practical problems that make trial of a case easy, expeditious, and inexpensive. *Lueck*, 236 F.3d at 1145 (quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947)).  The "court's focus should not rest on the number of witnesses or quantity of evidence in each locale.  Rather, a court should evaluate the materiality and importance of the anticipated evidence and witnesses' testimony and then determine their accessibility and convenience to the forum." *Id.* at 1146 (simplified) (citation omitted).

Here, key witnesses for defendant and plaintiff reside in Ohio and Oregon, respectively.  Defendant represents that other potential witnesses reside near Pittsburgh, Pennsylvania, Atlanta, Georgia, or Jacksonville, Florida.  Also, one of defendant's potential witnesses suffers from ALS, which would make travel to Oregon difficult and might preclude that witness from traveling to Oregon for trial.

This factor does not weigh more heavily in favor of defendants than plaintiffs. If any witnesses are unable to travel, their testimony could be perpetuated or they could testify remotely. The court has the capability to accommodate such remote testimony.

Additionally, a judgment could be enforced in either jurisdiction. In sum, the private factors do not favor defendant over plaintiff.

### 2.     Public Interest Factors

Courts consider the following public interest factors: (1) local interest in the lawsuit, (2) the court's familiarity with governing law, (3) burden on local courts and juries, (4) congestion in the court, and (5) costs of resolving a dispute unrelated to this forum. *Lueck*, 236 F.3d at 1145 (citing *Piper Aircraft*, 454 U.S. at 259-61, and *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508-09 (1947)).

### a.     Local Interest in Lawsuit

"In determining if there is a local interest in resolving the dispute, the court must ask if the State of Oregon has an identifiable interest in this case." *Chengwu (Kevin) Zhao v. Guo Qiang Ye (William)*, No. 3:14-cv-00157-MO, 2014 WL 4851666, at *4 (D. Or. Sept. 29, 2019) (citing *Piper Aircraft*, 454 U.S. at 261); *Carijano v. Occidental Petroleum Corp.*, 643 F.3d 1216, 1232 (9th Cir. 2011) (holding that the "aim of determining if the forum in which the lawsuit was filed has its own identifiable interest in the litigation which can justify proceeding in spite of [the remaining public interest factors]").

It does not appear that Oregon has any identifiable interest in resolving this lawsuit.

### b.     Court's Familiarity with Governing Law

Under the ICA, defendant's breach-of-contract counterclaim is governed by Ohio law. *See* ICA ¶ 18, ECF 10.  It is less clear whether Oregon or Ohio law applies to plaintiff's fraud and quantum meruit claims.

"When a federal court sits in diversity to hear state law claims, the conflicts laws of the forum state—here [Oregon]—are used to determine which state's substantive law applies." *CRS Recovery, Inc. v. Laxton*, 600 F.3d 1138, 1141 (9th Cir. 2010).  "The threshold question in a choice-of-law problem is whether the laws of the different states actually conflict." *Spirit Partners, LP v. Stoel Rives LLP*, 212 Or. App. 295, 301 (2007) (citations omitted).  If there is no material difference, Oregon law applies.  *Portfolio Recovery Assocs., LLC v. Sanders*, 366 Or. 355, 372-73 (2020).

Oregon's choice-of-law methodology for torts and other noncontractual claims governs which law applies to plaintiff's claims for fraud and quantum meruit.  *See* O.R.S. 15.400–460. "Section 15.440—the general approach—ties the applicable law to the location of the injury, the location of the injurious conduct, and the domicile of the parties." *R.M. v. Am. Airlines, Inc.*, 338 F. Supp. 3d 1203, 1210 (D. Or. 2018).  "Where the parties are domiciled in different states, the applicable law depends on the locations of the injury and the injurious conduct." *Id.*

Here, plaintiff is domiciled in Oregon, and defendant is domiciled in Ohio.  The injurious conduct occurred in Ohio, but the resulting injury occurred in Oregon.  Thus, O.R.S. 15.440(3)(c) instructs that Ohio law applies unless it was both foreseeable that the conduct would cause an injury in the state of injury and "the injured person formally requests the application of that state's law in a pleading."  Plaintiff has formally requested application of Oregon law, and although neither party has addressed foreseeability, it seems reasonable to infer

that defendant's alleged conduct would cause injury to plaintiff in Oregon. As such, Oregon law applies. But even assuming Ohio law applies, the elements of common law fraud and quantum meruit under Ohio law do not appear to be markedly different from Oregon law or so complex that this court could not apply them.[8]

### c. Remaining Public Interest Factors

Generally, the burden on local courts and juries and congestion in the court are neutral factors, as courts everywhere are burdened in these ways.

Also, this court cannot conclude that this dispute is unrelated to this forum. Plaintiff performed work for defendant primarily in this state and traveled to Ohio very rarely, and plaintiff received its few 15% commission payments on the Home Depot house account from defendant here.

In sum, the private and public interest factors weigh evenly for both parties. Defendant has not sufficiently demonstrated that the private and public interest factors "strongly favor dismissal." *See Tuazon v. R.J. Reynolds Tobacco Co.*, 433 F.3d 1163, 1180 (9th Cir. 2006) ("Even when an adequate alternative forum exists, we will not disturb the plaintiff's original choice of forum 'unless the 'private interest' and the 'public interest' factors strongly favor' dismissal.") (quoting *Lueck*, 236 F.3d at 1146).

### ORDER

Defendant's motion to dismiss or transfer (ECF 64) is DENIED.

DATED  July 8, 2021.

_____
/s/ Youlee Yim You
Youlee Yim You
United States Magistrate Judge

---

[8] Ohio limits punitive damages to twice the amount of the compensatory damages under circumstances that might be implicated here. *See* O.R.C. 2315.21(D)(2)(b).